## M. Charba v. The State.

### No. 2877. Decided May 24, 1905.

**1.—Murder in Second Degree—Attempted Flight—Evidence.**

There was no error on cross-examination of defendant, who was being tried for murder, to ask him whether he had not attempted to saw out of jail, which he answered in the affirmative, as attempted flight was admissible testimony.

**2.—Same—Manslaughter—Charge of Court—Statutes Construed.**

Where the evidence, in a trial for murder, showed that defendant shot deceased because the latter was making a demonstration to shoot him, according to one of defendant's statements, and according to another statement defendant made, because deceased stole his hammer and sweep, there was no error in not charging on manslaughter, and neither article 706 nor 364 of Code of Criminal Procedure applied.

Appeal from the District Court of Fayette. Tried below before L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Duncan, Walters & Lane,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—This conviction is for murder in the second degree, the penalty fixed being twenty-five years confinement in the penitentiary.

Appellant's first complaint is, that the court erred in permitting appellant, while testifying in his own behalf, on cross-examination, to state that he attempted to saw out of jail. The bill presenting this matter is defective. However, any effort at flight or attempted flight is admissible testimony against appellant. He having taken the stand in his own behalf, he could be cross-examined on this matter.

Appellant insists that the court erred in failing to charge on manslaughter. The record shows that appellant and deceased, Kubala, owned adjoining farms. Appellant had frequently missed various articles of husbandry, such as clevis, single-trees, etc. After several of the articles had been missed, he suspected deceased of committing the theft, having missed a hammer and sweep the evening before the homicide. Appellant testified as follows: "I concluded I would go into the Kubala pasture and look around and see if I could find them. I thought probably they had been thrown in the high weeds growing in the pasture. I looked around a good while and did not find anything, and in walking around I came to the tank of deceased, and discovered deceased coming to the tank. He was riding a horse and leading two horses. In order to avoid deceased seeing me I hid myself

by squatting down in the brush, where there were some weeds. I had told deceased once or twice before that I did not want him in my field, and of course I was told not to come in his pasture. I did not care for deceased seeing me. While in that position (hiding) deceased came to the tank, left the horses drinking, went around the tank, and about one hundred and fifty yards into the brush, and I saw him pick up something and brought it to the tank. I saw it was my sweep and hammer. He threw them into the tank. Then came around back to where his horses were, and I raised up and said, 'Good day,' and at the same time told him, 'Now I have caught you.' Deceased Kubala, threw his hand into his right hip pocket, and said, 'God damn you, I told you to keep out of my pasture.' He threw his hand into his hip pocket, as if he was trying to get something, and then I shot him. I did not intend to shoot him when I raised up with my gun in hand, but wanted to take him along to my neighbor, Tomcek. My purpose in taking him to Tomcek was to take him there and get Tomcek to go to the place with us and show him the things that had been stolen and had been placed there by deceased. That was my idea about it at the time. I shot him then, when he threw his hand into his hip pocket, and said, 'God damn you, Hell, what are you doing in my pasture?' The first shot took effect in his breast. I shot him the second time when he was in the attitude of squatting, and he still had his hand in his hip pocket. He was down on his knees kinder. All during this time he kept his hand in his hip pocket. I thought he was trying to shoot me and get something to shoot me with; that is, I thought he was trying to get a pistol." He further testified that he did not kill deceased because he stole his property, but he was afraid deceased would kill him. The evidence shows that deceased when found, had on his working gloves and further that the hammer and sweep were in the tank. We do not think the evidence presents the issue of manslaughter at all. Article 701, Penal Code, provides: "Insulting words or gestures, or an assault and battery, so slight as to show no intention to inflict pain or injury, or an injury to property, unaccompanied by violence, are not adequate causes." There was no violence done the property of appellant. The record merely shows, as stated in appellant's testimony, that he shot deceased, as he states, because deceased was in the act of making an assault upon him. Appellant insists that under article 364, Code Criminal Procedure, he had a right to arrest deceased, when found in possession of the stolen property. The statement from appellant's testimony above, shows he was not attempting to arrest him. It is true he says he had that idea, but he made no effort to arrest him, but shot because deceased was making a demonstration to shoot him. We think the evidence amply supports the verdict rendered by the jury, and shows that appellant killed deceased upon a grossly inadequate cause, the petty theft of property. The record further shows that appellant told his neighbors

he killed deceased because he had stolen his hammer and sweep. There is no error in this record, and the judgment is affirmed.

*Affirmed.*